J-S15030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GARY THOMPSON | : | |
| | : | |
| Appellant | : | No. 1774 EDA 2021 |

Appeal from the PCRA Order Entered June 16, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0001679-2015

BEFORE:  NICHOLS, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED JUNE 22, 2022**

Gary Thompson (Appellant) appeals from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA).  42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court detailed the case history as follows:

> On January 29, 2015, [Appellant], in concert with three others, robbed Robert Gotwalt on the 3100 block of D Street in Philadelphia.  One of the men had a gun and used it to hit Gotwalt several times over the head.  [Appellant] and his co-defendants were pulled over in a vehicle shortly after the robbery and arrested.  The gun and a [ski] mask used in the robbery were also found in the vehicle.
>
> A [consolidated, non-jury] trial was held on November 16 and 17, 2016.  At the end of the trial, [Appellant] was found guilty of aggravated assault, robbery, conspiracy, [several firearms offenses,] receiving stolen property, simple assault, recklessly endangering another person, and possessing an instrument of a crime.  On February 10, 2017, [Appellant] was sentenced to an aggregate sentence of 3.5 to 7 years [of] incarceration, followed

by 2 years of probation. [Appellant] did not file a post-sentence motion or a notice of appeal.

On August 10, 2017, [Appellant timely] filed a *pro se* PCRA petition, seeking reinstatement of his direct appeal rights. On August 30, 2017, James R. Lloyd, Esquire [(PCRA counsel)], entered his appearance as appointed PCRA counsel. On October 10, 2017, [PCRA counsel] filed an amended PCRA petition. On February 14, 2018, the Commonwealth filed a motion to dismiss. On April 9, 2018, [PCRA counsel] filed a second amended PCRA petition.

On September 10, 2018, an evidentiary hearing [(PCRA hearing)] was held on one issue: whether [Appellant] requested trial counsel to file an appeal. [Appellant] testified that at both his trial and sentencing, he was represented by Judge Hall, Esquire [(Attorney Hall, trial counsel, or Hall)]. N.T., 9/10/18, p. 8-9. When asked about requesting Mr. Hall to file an appeal on his behalf, [Appellant] testified as follows:

> [APPELLANT]: At the sentencing hearing, Judge Gordon had made a statement where he said that he was thinking about the case every [*sic*] since trial and he said he didn't know if he was sending the right people to jail.
>
> So as soon as I heard that, I asked [Attorney] Hall, when he asked me "Are you okay with the sentence," I said, "Yes, but I want to file an appeal." And he said he was going to talk to me and I never heard from him since.
>
> * * *
>
> PCRA COUNSEL: Okay. Before that did you ever tell [Attorney] Hall that you wanted to file an appeal or was that the first time you told him?
>
> [APPELLANT]: That was the first time.
>
> PCRA COUNSEL: Did that take place -- where did this conversation happen?
>
> [APPELLANT]: As we were still sitting at the sentencing.

- 2 -

*Id.* at 9-10. [Appellant] further testified that after his sentencing, he did not attempt to contact Mr. Hall. *Id.* at 11. [Appellant] did ask his mother to reach out to Mr. Hall, but she told [Appellant] that she was unable to get ahold of [Hall]. *Id.* at 12. …

The Commonwealth then called Attorney Hall to testify. Hall affirmed that he represented [Appellant] through the waiver trial and sentencing. *Id.* at 17-18. Hall also affirmed that [Appellant] was charged with robbery and aggravated assault and that the DNA found on the ski mask matched [Appellant's DNA]. Hall testified about [Appellant] requesting an appeal as follows:

HALL: I spoke to [Appellant] briefly regarding an appeal, and I said something along the lines of — and, Judge, I'm paraphrasing here — I said "I can think of no meritorious claims." And I indicated to [Appellant] that the DNA evidence that matched his DNA was not good.

But I told him that I will take a second look at things, and if there were, as I recall, any meritorious appealable issues, then I will go on and file the appeal anyway and ask the Judge to appoint new counsel because I do not accept court appointed appeals, nor have I ever.

COMMONWEALTH: And so this conversation that you had with [Appellant] regarding any potential appeal issues, when did that take place?

HALL: I want to say during sentencing. I want to say it was either during sentencing or immediately after trial once the convictions were handed down. And if I recall correctly, [Appellant's] response was "Okay."

COMMONWEALTH: And that was his response to your — could you explain what that was in response to?

HALL: Sure. I told [Appellant] that if I don't see anything — and that particular day I didn't see anything — but I told him that I would take a look at things and see if I could see anything, however, if he wanted me to appeal anyway, I will ask the Judge to appoint new counsel or just go on and file the appeal.

And if [Appellant] came up with anything that he wanted me to appeal, then he could either let me know or have his mother give me a call. The reason I referred to his mother is because from my time of representing [Appellant], his mother and I have spoken either on the phone or in person approximately 15 times. She had my phone number. So, I recall [Appellant's] response being as what I just said, "Okay."

COMMONWEALTH: So he didn't ask you to file an appeal?

HALL: Absolutely not.

* * *

COMMONWEALTH: So what is your typical practice when a client asks you to file an appeal?

HALL: If that request is made while we were still in court or before the Judge, I would have asked the Judge to formally withdraw my representation and appoint counsel.

COMMONWEALTH: And you would have done so on the record?

HALL: Absolutely.

COMMONWEALTH: If [Appellant] had asked you to file an appeal?

HALL: Absolutely.

COMMONWEALTH: And if someone had contacted you by phone or letter regarding an appeal or a post sentence motion, what is your typical practice?

HALL: I would have went on and filed the appeal and then went into Judge Gordon's courtroom and asked him to appoint counsel, because I don't accept those type of appointments.

*Id.* at 18-22. Hall further testified that after sentencing, he did not receive calls, emails, or letters from [Appellant's] mother requesting him to file an appeal. *Id.* at 22.

On re-direct, Hall elaborated on the conversation he had with [Appellant at sentencing]:

COMMONWEALTH: Did you tell [Appellant] that you would file an appeal?

HALL: I did not.

COMMONWEALTH: Did you explain to him that he needed to ask for an appeal to be filed?

HALL: I did not say those exact words, no.

COMMONWEALTH: So if it wasn't in those exact words, what was said?

HALL: I told [Appellant] that if he wanted me to file an appeal on his behalf, or have an appeal filed period, then he could let me know or he should let me know or either have his mother contact me and I will just go on and do it and ask the Judge to appoint counsel.

So I told [Appellant] that if I didn't hear from him, I would assume that he doesn't want to appeal. And the reason I said it that [] is because [Appellant] and I had a fairly, somewhat lengthy conversation regarding his sentence. I … indicated to [Appellant] that I felt that was a very good sentence based on the charges he was found guilty of.

*Id.* [at] 27-28. …

On January 31, 2019, [the PCRA] court sent [Appellant a Pa.R.Crim.P.] 907 notice of intent to dismiss [Appellant's PCRA petition]. On February 19, 2019, [PCRA counsel] filed a response to the 907 notice. On February 28, 2019, following a thorough review of the record, this court dismissed [Appellant's] PCRA petition for lack of merit.

PCRA Court Opinion, 6/26/19, at 2-5.

Appellant timely appealed, arguing Attorney Hall was ineffective for failing to file a requested direct appeal. On April 7, 2020, this Court vacated and remanded the case for the PCRA court "to make the necessary credibility determination regarding whether Appellant requested that Attorney Hall file a direct appeal." **Commonwealth v. Thompson**, 236 A.3d 1057, at *6 (Pa. Super. 2020) (unpublished memorandum).

On June 16, 2021, in compliance with this Court's directive, the PCRA court stated on the record:

> I find credibility in favor of Attorney Hall. I do not believe [Appellant] requested that [Hall] take an appeal. And so, the petition is dismissed based upon lack of merit. I believe Attorney Hall when he says [Appellant] did not ask him to file an appeal.

N.T., 6/16/21, at 5. That same day, the PCRA court entered an order dismissing Appellant's PCRA petition. Appellant timely appealed. Although the PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) statement of errors, it issued a Rule 1925(a) opinion in which it relied upon the rationale in the prior June 26, 2019, opinion. **See** PCRA Court Opinion, 10/21/21, at 1-2; **see also id.** at 2 (stating the PCRA court, "did not find [Appellant] to be credible and remained unconvinced that [Appellant] ever requested Hall to file an appeal.").

Appellant presents a single issue for our consideration:

> Did the PCRA Court err and/or abuse its discretion when it denied [Appellant's] petition under the PCRA seeking leave to file a direct appeal *nunc pro tunc* where trial counsel failed to file an appeal?

Appellant's Brief at 4.

"Our standard of review for issues arising from the denial of PCRA relief is well-settled. We must determine whether the PCRA court's ruling is supported by the record and free of legal error." *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017). We review the PCRA court's decision for an abuse of discretion. *Commonwealth v. Roney*, 79 A.3d 595, 603 (Pa. 2013). "It is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa. Super. 2019) (citation omitted).

> We view the evidence of record in a light most favorable to the Commonwealth, as the prevailing party below. We are bound by the PCRA court's credibility determinations, unless those determinations are not supported by the record; however, we review the PCRA court's legal conclusions *de novo.*

*Commonwealth v. Flor*, 259 A.3d 891, 902 (Pa. 2021) (citations omitted); *see also Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014) ("As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record.").

All PCRA petitions must be filed within one year of the date the judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1); *see also Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010) (courts lack jurisdiction to address untimely PCRA petitions). Here, Appellant timely filed his PCRA petition within one year of his judgment of sentence becoming final in March 2017.

To obtain relief based on a claim of ineffective assistance of counsel, a PCRA petitioner must establish, by a preponderance of the evidence, that: (1) the underlying claim is of arguable merit; (2) there was no reasonable basis for counsel's action or failure to act; and (3) but for counsel's error, there is a "reasonable probability the result of the proceeding would have been different." **Commonwealth v. Treiber**, 121 A.3d 435, 444 (Pa. 2015); **see also** 42 Pa.C.S.A. § 9543(a)(2)(ii). Failure to satisfy any of the three prongs is fatal to an ineffectiveness claim. **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014). Counsel is presumed to be effective, and it is the petitioner's burden to prove otherwise. **Id.**

Where defense counsel inexplicably fails to file a requested direct appeal, we have explained that such inaction

> constitutes ineffective assistance *per se*, such that the petitioner is entitled to reinstatement of direct appeal rights *nunc pro tunc* without establishing prejudice. However, **before a court will find ineffectiveness of counsel for failing to file a direct appeal, the petitioner must prove that he requested a direct appeal** and counsel disregarded the request.

**Commonwealth v. Ousley**, 21 A.3d 1238, 1244 (Pa. Super. 2011) (emphasis added; citations omitted).

Appellant argues Attorney Hall was *per se* ineffective for failing to file a requested direct appeal:

> [Appellant] indicated that he wanted to appeal. [Attorney Hall] stated that he would look into potential appellate issues and file an appeal if he found an issue that counsel considered to be meritorious. [Attorney Hall] did not advise that [Appellant] had a right to appeal regardless of trial counsel's assessment of the

merits of any potential appellate issues. Finally, the record clearly reflects that [Attorney Hall] instructed [Appellant] that he had to take any and all appellate action **through counsel**. [Attorney Hall's] subsequent failure to file an appeal after [Appellant] told him that he wished to proceed with an appeal resulted in the loss of the opportunity to challenge the verdict and sentence on appeal.

Appellant's Brief at 24 (emphasis in original). Appellant references his testimony that he expressly asked Attorney Hall to file a direct appeal. *Id.* at 29-30 (citing N.T., 9/10/18, at 10 (Appellant stating, in response to Attorney Hall asking Appellant at sentencing, "'Are you okay with the sentence,' I said, 'Yes, but I want to file an appeal.' And [Attorney Hall] said he was going to talk to me and I never heard from him since.")).

Appellant argues:

In essence, [trial] counsel told [Appellant] that he might file an appeal, and then never bothered to tell [Appellant]: (1) that [trial counsel] had not filed an appeal; or, more importantly, (2) that [Appellant] had a right to file an appeal regardless of whether [trial counsel] wanted to file an appeal.

Appellant's Brief at 35.

Critically, the PCRA court found Attorney Hall's testimony credible and discredited Appellant's testimony that he asked Attorney Hall to file an appeal. *See* N.T., 6/16/21, at 4-5; PCRA Court Opinion, 10/21/21, at 2; *see also* PCRA Court Opinion, 6/26/19, at 8 ("at no point is there any statement on the record of [Appellant] requesting [Attorney] Hall to file a notice of appeal"; Appellant admitted at the PCRA hearing "he did not attempt to contact Hall at any time after sentencing to request that he file an appeal.").

As the PCRA court's findings are supported by the record, we may not disturb them. *Flor*, *supra*, at 902.

Finally, to the extent Appellant claims trial counsel was ineffective for failing to advise him that he could file a direct appeal *pro se*, Appellant waived this claim for failing to raise it in his PCRA petition or otherwise before the PCRA court.[1] *See* Pa.R.A.P. 302(a) (claims cannot be raised for the first time on appeal); *Roney*, 79 A.3d at 611 (appellant/petitioner waived issues not presented to the PCRA court); *see also* Pa.R.Crim.P. 902(B) ("Each ground relied upon in support of the relief requested **shall** be stated in the [PCRA] petition. Failure to state such a ground in the petition **shall preclude the defendant from raising that ground** in any proceeding for post-conviction collateral relief." (emphasis added)).

Furthermore, at sentencing, Attorney Hall informed Appellant, on the record, of Appellant's right "to file an appeal asking that a higher court review what the judge here has done today." N.T., 2/10/17, at 26; *see also id.* (counsel advising Appellant if he "cannot afford an attorney, one will be

_____

[1] A claim that defense counsel was ineffective for failing to file a requested direct appeal is distinct from a claim of counsel's ineffectiveness for failing to consult with defendant. **Compare Commonwealth v. Lantzy**, 736 A.2d 564, 571-72 (Pa. 1999) (discussing claims that defense counsel abandoned defendant by failing to file requested direct appeal), **with Commonwealth v. Touw**, 781 A.2d 1250, 1254 (Pa. Super. 2001) (discussing claims that counsel failed to consult with defendant about an appeal).

appointed to represent you."). Appellant responded that he understood and did not have any questions. *Id.* at 26-27.

Accordingly, since Appellant failed to plead and prove that he asked trial counsel to file a direct appeal, the PCRA court did not abuse its discretion in rejecting Appellant's ineffectiveness challenge and dismissing his PCRA petition. *See*, *e.g.*, *Commonwealth v. Mojica*, 242 A.3d 949, 956 (Pa. Super. 2020) (affirming denial of PCRA relief where appellant/defendant failed to prove he asked defense counsel to file direct appeal); *see also Commonwealth v. Markowitz*, 32 A.3d 706, 717 (Pa. Super. 2011) ("While counsel cannot refuse to file a direct appeal because he believes there are no issues to appeal, he is not required to file an appeal that is not requested."); *cf. Lantzy*, 736 A.2d at 572-73 (holding appellant proved defense counsel's ineffectiveness for failure to file a requested direct appeal, and remanding for reinstatement of appeal rights).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/2022

- 11 -